UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANTHONY HARRIS,

         Plaintiff,

    v.

STATE OF NEVADA, *et al.*,

         Defendants.

Case No. 3:22-cv-00556-ART-CSD

ORDER

Plaintiff Anthony Harris sued Defendants W.A. Gittere, William Reubart, David Drummond, Tasheena Cooke, Curtis Rigney, Homan, Stolk, Jesse Cox, Dr, Parento, Miller, Boardman, Jennifer Hunt, Snow, Allred, Jacobs, Roman, Matthew Noriega, T. Bradshaw, Dawn Jones, Michael McArdle, and Robert Dugan, among others, for violations of his civil rights while he was housed at Ely State Prison ("ELY"). (ECF No. 17.) Before the Court is Magistrate Judge Craig Denney's Report and Recommendation (R&R) recommending that Defendants' motion for summary judgment be granted. (ECF No. 139.)

For the reasons set forth below, the Court adopts Judge Denney's R&R, granting Defendants' motion for summary judgment.

## I.      **FACTS AND PROCEDURAL HISTORY**

On October 19, 2022, Mr. Harris arrived at ESP for an overnight stop. (ECF Nos. 17 at 10–11; 123 at 2.) While he was being processed, Mr. Harris was told to stop talking and remain silent. (*Id.*) Mr. Harris continued to speak with an offender near him, and Matthew Noriega told him again to stop talking. (*Id.*) Surveillance footage then shows Noriega escorting Mr. Harris to a holding cell, at which point both individuals disappear from the video. (ECF No. 125-2.) During that walk, there is a physical altercation between Noriega and Mr. Harris, which Defendants contend was caused by Mr. Harris assaulting Noriega. (ECF No. 123

at 2.) Mr. Harris, however, alleges that another officer grabbed his arm and forced him forward, tripping him. (ECF No. 17 at 12.) According to Mr. Harris, when he then yelled at the officer, Noriega and that officer forced him down, slamming his head against the concrete multiple times. (*Id.*) Neither party disputes that the altercation resulted in Noriega restraining Mr. Harris on the ground.

Handheld camera footage, which captured the immediate aftermath of the incident, shows Mr. Harris on his feet, responding to officers. Medical staff almost immediately arrives and evaluates Mr. Harris, who indicates his eyebrow area hurts. (ECF No. 125-1 at 00:00:40–00:02:35.) Mr. Harris then states that he wants to see medical. (*Id.*) Medical staff asks if Mr. Harris can walk, and while no audible response can be heard on the video, he begins walking with an escort toward medical. (*Id.*) An unusual occurrence report indicates that Mr. Harris was assessed at medical, where it was determined that no abnormal findings were present. (ECF No. 125-3 at 138.) Mr. Harris was told to report to medical if he experienced other symptoms. (*Id.*)

On October 20, 2022, Mr. Harris sent a kite stating that he tried to notify medical about clear fluid leaking from his nose, but did not believe that medical had been alerted. (*Id.* at 175.) The response to this kite indicates that Mr. Harris was seen by a nurse on October 21, 2022, and that he was referred to a provider. Medical did not observe any swelling to Mr. Harris's mouth or face at the time. (*Id.* at 197.)

On October 30, 2022, Mr. Harris sent another kite stating he had pain in his right ankle and knee, his back, his left elbow and shoulder, his neck and head, as well as blurry vision and a swollen ear. (*Id.* at 172.) In response, he was scheduled to see a provider. (*Id.*)

Mr. Harris was seen on November 22, 2022, and no swelling was observed. (*Id.* at 196, 204.) Mr. Harris was given ibuprofen, and x-rays of his right knee, lower back, and left wrist were ordered. (*Id.*) A lidocaine patch was also ordered

for his pain. (*Id.*) X-rays were conducted on December 21, 2024, with normal results. (*Id.* at 183–84.) Notes from a November 22, 2022, telemedicine mental health appointment, showed that the provider concluded, after reviewing footage from the October 19, 2022, incident, that Mr. Harris' injuries were not the result of that incident. (*Id.* at 195.)

On February 26, 2023, custody was called to take Mr. Harris to be assessed for complaints of his chest pain. Mr. Harris knelt on the floor to be restrained for transport and exhibited no signs of pain or physical limitation. (*Id.* at 194.)

In response to the October 19, 2022, incident, Mr. Harris submitted an informal level grievance, number 2006-31-48198, on January 6, 2023, alleging excessive force by staff. (ECF No. 123-4 at 2, 4–43.) J. Underwood responded to this grievance on February 17, 2023, stating that the grievance was partially granted as it was referred to the Inspector General's ("IG") office for investigation. (*Id.* at 3.) On March 2, 2023, Cooke, the grievance coordinator, signed and approved the partial granting of the grievance. (*Id.* at 2.) Mr. Harris did not sign the grievance, thus indicating his disagreement with the response, until March 23, 2023. (*Id.*)

Mr. Harris then submitted a first level grievance on February 23, 2023, stating that he had not received a response to his informal grievance, even though it had been 48 days since he had submitted it. (*Id.* at 47–48.) This grievance reiterated that excessive force had been unnecessarily used against him. (*Id.*)

On March 27, 2023, Mr. Harris submitted a second first level grievance, which sought to confirm receipt of the first level grievance he submitted on February 23, 2023. (*Id.* at 45.) On March 31, 2025, Tasheena Cooke rejected this first level grievance because it is "not a KITE." (*Id.* at 44.) The improper grievance memo stated that the grievance may be resubmitted at the same level after the deficiencies were corrected. (*Id.*)

On April 13, 2023, Tasheena Cooke also responded to Mr. Harris' initial

first level grievance with an improper grievance memo rejecting the grievance because: (1) "the administrative claim form cannot have TBD $" and (2) "[t]his has been referred to the IG's office for investigation." (*Id.* at 46.) The memo instructs Mr. Harris to resubmit the grievance at the first level after correcting the noted deficiencies. (*Id.*)

On April 28, 2023, Mr. Harris submitted a third first level grievance, stating that after he was referred to the IG's office, he received a retaliatory notice of charges and was forced to plead guilty. (*Id.* at 57–59.) The grievance indicated that he no longer wanted the IG to be involved and asked for the grievance to be forwarded to an "alt institution" and to advance to the second level "or 3098" until exhausted. (*Id.*) On May 12, 2023, David Drummond responded with an improper grievance memo, indicating that Mr. Harris's grievance was rejected for the third and final time at the first level for changing the issue of his grievance. (*Id.* at 56.)

Mr. Harris did not pursue this grievance any further, and there is no evidence that he submitted another grievance raising his excessive force claim. Additionally, there is no evidence that he submitted grievances regarding the following claims: (1) Fourteenth Amendment due process disciplinary hearing claim; (2) Eighth Amendment failure to protect claim; (3) Eighth Amendment conditions of confinement claim related to temperature of his cell and lack of blankets; (4) Eighth Amendment conditions of confinement for unsanitary cell conditions; (5) Eighth Amendment conditions of confinement claim for lack of exercise; (6) First Amendment right to petition for redress of grievances claim; (7) due process medical privacy claim; and (8) claims parallel to the Eighth Amendment claims under the Cruel and Unusual Punishment Clause of Nevada's Constitution (Art. 1, Sec. 6).

Mr. Harris also alleges that some of his property, specifically soap, creamer, sweeteners, coffee, and Advil, were taken from one of his personal property boxes in October 2022 by Bradshaw. (ECF No. 17 at 38.)

On December 21, 2022, Mr. Harris filed this lawsuit. (ECF No. 1.) The court screened Mr. Harris's complaint and allowed him to proceed with the following claims: (1) Eighth Amendment excessive force claim; (2) Eighth Amendment deliberate indifference to serious medical needs claim; (3) Fourteenth Amendment due process disciplinary hearing claim; (4) Fourteenth Amendment due process intentional deprivation of property; (5) Eighth Amendment failure to protect claim; (6) Eighth Amendment conditions of confinement claim related to temperature of his cell and lack of blankets; (7) Eighth Amendment conditions of confinement for unsanitary cell conditions; (8) Eighth Amendment conditions of confinement claim for lack of exercise; (9) First Amendment right to petition for redress of grievances claim; (10) due process medical privacy claim; (11) claims parallel to the Eighth Amendment claims under the Cruel and Unusual Punishment Clause of Nevada's Constitution (Art. 1, Sec. 6). (ECF No. 19.)

Defendants subsequently moved for summary judgment, arguing: (1) Mr. Harris did not exhaust administrative remedies as to the following claims: excessive force, due process disciplinary hearing, failure to protect, conditions of confinement, right to petition for redress of grievances, due process medical privacy, and the Nevada Constitution claim; and (2) Defendants are entitled to qualified immunity. (ECF No. 123.) Mr. Harris was granted a significant extension but did not timely file a response to Defendants' motion for summary judgment. (*See e.g.,* ECF No. 137.)

Judge Denney concluded that Mr. Harris did not exhaust his administrative remedies as to certain claims, and Defendants were entitled to qualified immunity as to other claims because no constitutional violations occurred, therefore, summary judgment should be granted for Defendants. (ECF No. 139.) Mr. Harris failed to object to the R&R within the allotted time period.

Mr. Harris then informed the Court that law library staff at High Desert State Prison ("HDSP") had failed to file his pleadings. (ECF No. 141.) The Court

granted Mr. Harris an extension to file his response to Defendants' motion for summary judgment and his objection to Judge Denney's R&R. (ECF No. 150.)

The Court has reviewed Mr. Harris's late-filed pleadings and finds that they would not change the outcome of Judge Denney's report and recommendation. The Court considers Mr. Harris's arguments in both his response and objection in reviewing the R&R.

## II.      LEGAL STANDARD

### A. Review of Reports and Recommendations

Under the Federal Magistrates Act, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Mr. Harris objected to the R&R. (ECF Nos. 93, 94.) Therefore, the Court reviews the R&R *de novo* for issues Mr. Harris objected to.

### B. Motion for Summary Judgment

Summary judgment is appropriate when the record shows "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248.

In considering a motion for summary judgment, "all reasonable inferences are drawn in the light most favorable to the non-moving party." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

& *Moore Inc.,* 793 F.2d 1100, 1103 (9th Cir. 1986). However, if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson,* 477 U.S. at 249.

**III.     ANALYSIS**

Mr. Harris objects to the magistrate judge's conclusions on the ground that (1) discovery is incomplete, (2) he could not administratively exhaust, because administrative remedies were unavailable, and (3) qualified immunity is inappropriate. (ECF Nos. 151; 152.) The Court addresses each objection in turn.

**A. Incomplete Discovery**

Mr. Harris first argues that summary judgment is inappropriate because discovery is incomplete. However, discovery closed on February 14, 2025, after Mr. Harris had roughly a year to conduct discovery. (*See* ECF No. 122 at 1–2.) Mr. Harris previously moved to reopen discovery. (ECF No. 119.) The magistrate judge denied this motion because Mr. Harris had not demonstrated excusable neglect. (*Id.* at 2–3.) Mr. Harris has not moved to reopen discovery since that motion was denied.

Additionally, Mr. Harris's arguments regarding discovery being incomplete largely concern his inability to meaningfully review video evidence. (ECF Nos. 151 at 4; 152 at 3.) While the Court has reviewed both the surveillance footage and handheld video camera footage, neither exhibit contains additional information regarding the incident and aftermath that is not set forth in other records submitted by Defendants. The Court thus finds that there is no evidence that discovery is incomplete, and therefore summary judgment is appropriate at this juncture.

### B. Availability of Grievance Procedure

Mr. Harris argues that administrative remedies were unavailable because (1) the process operated as a dead end, (2) officials thwarted access through intimidation or interference, and (3) the process was opaque. (ECF No. 152 at 12–14.)

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. An inmate need exhaust only such administrative remedies as are "available." *Ross v. Blake*, 578 U.S. 632, 648 (2016); *see e.g., Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022).

The Supreme Court has recognized at least three ways in which an administrative remedy is unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) if it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 633.  In the third instance, a grievance procedure is unavailable when "the correctional facility's staff misled the inmate as to the existence or rules of the grievance process," misled the inmate "into thinking that ... he had done all he needed to initiate the grievance process" or "play[s] hide-and-seek with administrative remedies." *Id.* at 644 n.3 (citations omitted).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). To determine if a defendant has proved a failure to exhaust under the PLRA, the court applies a burden-shifting framework. *Williams v. Paramo*, 775 F.3d 1182, 1191 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996)). The "defendant must prove that there is an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* (citations omitted). "Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable" because they were "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* (quoting *Albino*, 747 F.3d at 1172 (citing *Hilao*, 103 F.3d at 778 n.5 (9th Cir. 1996))).

Mr. Harris does not dispute that Defendants met their initial burden. (*See* ECF Nos. 151; 152.) A review of Mr. Harris's grievance history shows that he did not properly grieve through all levels of the grievance process, as required by AR 740, because he never raised his grievance to the Second Level. (ECF No. 123-4 at 2–59.)

While Hr. Harris states in a conclusory manner that the grievance process operated as a dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates, he does not provide any allegations or evidence showing that these circumstances existed. (ECF No. 152 at 12–14.)

Mr. Harris also argues that prison officials used threats and intimidation to thwart him from taking advantage of the grievance process. (*Id.*) However, Mr. Harris was able to submit multiple informal and first-level grievances for his excessive force claim, received responses clearly identifying the issues with his grievances, and was able to submit grievances for some of his other claims in this case. (ECF No. 123-4 at 2–59.) There is no evidence that any of the prison officials'

alleged actions made the grievance process unavailable to Mr. Harris.

Additionally, Mr. Harris argues that repeated rejections of his excessive force grievances made the process incapable of use. (ECF Nos. 151 at 5–6; 152 at 12–14.) However, Mr. Harris's excessive force grievances were rejected for reasons listed within AR 740.04(2). Additionally, Mr. Harris received several improper grievance memorandums clearly identifying the issues that he needed to fix. (ECF No. 123-4 at 2–59.)

Thus, because Mr. Harris's grievances were rejected for proper reasons, the process was available, and he was required to administratively exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 825–27 (finding screening proper where rejection was supported by applicable regulations). The Court therefore agrees with the R&R and finds that Mr. Harris has not demonstrated that the grievance process was unavailable, as to excuse proper exhaustion for his excessive force claim.

Additionally, Mr. Harris did not file any grievance related to the following claims: (1) Fourteenth Amendment due process disciplinary hearing claim; (2) Eighth Amendment failure to protect claim; (3) Eighth Amendment conditions of confinement claim related to temperature of his cell and lack of blankets; (4) Eighth Amendment conditions of confinement for unsanitary cell conditions; (5) Eighth Amendment conditions of confinement claim for lack of exercise; (6) First Amendment right to petition for redress of grievances claim; (7) due process medical privacy claim; and (8) claims parallel to the Eighth Amendment claims under the Cruel and Unusual Punishment Clause of Nevada's Constitution (Art. 1, Sec. 6). Because Mr. Harris has not demonstrated that the grievance process for these claims was unavailable so as to excuse proper exhaustion, the Court grants summary judgment on these claims.[1]

---

[1] Because the issue of administrative exhaustion is dispositive, the Court need not reach Mr. Harris's other objections regarding these claims.

**C. Qualified Immunity**

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under this analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (internal quotation marks and citations omitted). In the first step of the process, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. In the second, the court determines whether the right was clearly established at the time of the alleged violation. *Id.* A right is clearly established if, at the time of the challenged conduct, "every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations and quotations omitted).

### i. Deliberate Indifference to Serious Medical Needs

Mr. Harris argues that summary judgment is not appropriate for his deliberate indifference to serious medical needs claim because Defendants knew of his serious medical needs, and they provided inadequate and delayed care. (ECF No. 152 at 10–12.)

To maintain a claim under the Eighth Amendment for deliberate indifference to serious medical needs, a plaintiff must show: (1) a "serious medical need" by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain; and (2) that the defendant's response to the need was deliberately indifferent, which can be demonstrated by showing a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The first element is an objective standard requiring the plaintiff to show that the deprivation was serious enough to amount to cruel and unusual punishment, and the second element is a subjective standard requiring the plaintiff to show that the defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Delay of, or interference with, medical treatment can amount to deliberate indifference. See *Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. See *Hallett*, 296 F.3d at 745–46; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

After the October 19, 2022, incident, Mr. Harris was promptly assessed for injuries at the scene of the incident and at medical. (ECF Nos. 125-3 at 138; 125-1.) Medical staff found no abnormal findings but directed Mr. Harris to report to them if he experienced additional symptoms. (*Id.*) After the incident, as described above, Mr. Harris submitted a number of kites requesting medical care. (ECF No. 125-3.) In response to all of these kites, Mr. Harris was evaluated and his medical complaints were addressed. (*Id.*) There is no evidence that medical care was inadequate or delayed. And even if some medical care was slightly delayed, Mr. Harris does not allege that any delay led to further injury. As a result, Mr. Harris has failed to show that Defendants violated the Eighth Amendment by being deliberately indifferent to his serious medical needs, and the Court grants summary judgment on this claim.

### ii. Due Process Related to Deprivation of Property

In his objection and response to Defendants' motion for summary judgment, Mr. Harris fails to address his due process claim related to deprivation of property. (*See* ECF Nos. 151; 152.) In his complaint, Mr. Harris alleged that his property, specifically soap, creamer, sweeteners, coffee, and Advil, were taken

from one of his personal property boxes while at ESP. (ECF No. 17 at 38.)

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

Mr. Harris has provided no evidence regarding the items that Bradshaw allegedly removed during a search of Mr. Harris's boxes at ESP. (*See* ECF Nos. 151; 152.) Additionally, Mr. Harris has not provided any evidence to establish that this was an authorized taking, rather than a negligent or unauthorized taking. (*See id.*) Consequently, Mr. Harris has failed to demonstrate that Defendants violated his due process rights, and the Court grants summary judgment to Defendants on this claim.

**IV.     CONCLUSION**

IT IS THEREFORE ORDERED that the report and recommendation (ECF No. 139) is ADOPTED.

IT IS FURTHER ORDERED that the motion for summary judgment (ECF No. 123) is GRANTED.

IT IS FURTHER ORDERED that, good cause appearing, Mr. Harris's motion to file exhibits in support of objections is GRANTED. (ECF No. 153.)

IT IS FURTHER KINDLY ORDERED that the Clerk enter judgment in Defendants' favor and close the case.

Dated this 26th day of March 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE